E. F. DREW & CO., INC., a corporation of the State of Delaware, v. SOUTHERN GROCERY STORES, INC., a corporation of the State of Delaware.

*(February* 4, 1935.)

LAYTON, C. J., and RODNEY, J., sitting.

*John Biggs, Jr.,* (of Biggs, Biggs and Lynch) for plaintiff.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* for defendant.
Superior Court for New Castle County, No. 189, March Term, 1933.

LAYTON, C. J., delivering the opinion of the Court:

On April 8, 1929, the plaintiff contracted to sell to the defendant a kind of colored oleomargarine, known as "Spredit," at an agreed price of twenty-six cents per pound. On June 8, 1929, Rogers Inc., a fully owned subsidiary of the defendant conducting a number of stores in which the commodity was to be sold, addressed a letter to the plaintiff expressing doubt as to the advisability of carrying forward the contract because of the heavy license fees required to be paid for the sale of the commodity under a federal statute, which license fees would amount to at least $19,200.00. This letter was on a letterhead of Rogers

Inc. but it must be considered as a letter on behalf of the defendant.

Pursuant to this letter, on June 27, 1929, the contract was set aside, and a new contract was entered into between the parties. By the new agreement the price of the commodity was increased to twenty-nine cents per pound for the fiscal year from June 30, 1929, to July 1, 1930, the plaintiff, however, to assume the burden of the license fee required for each of the stores of Rogers Inc., this corporation to pay the fees to the United States but, in turn, to deduct each month from the plaintiff's invoices the amounts of license fees paid.

Prior to June, 1929, the plaintiff had doubted the applicability of the federal statute to the commodity, and was then preparing to test the question in the federal courts.

The contract was carried forward and 222,504 pounds of "Spredit" were sold to Rogers Inc. for which it paid $64,526.16 less the license fees paid to the United States in the sum of $19,976.00, or the sum of $44,550.16.

The matter rested in this situation until 1932. On February 15, 1932, the Supreme Court of the United States, in *Miller v. Standard Nut Margarine Company of Florida,* 284 *U. S.* 498, 52 *S. Ct.* 260, 76 *L. Ed.* 422, *held* that the taxing statute was not applicable to a commodity of the nature of "Spredit." The defendant, being the sole stockholder of Rogers Inc., caused it to be dissolved under the provisions of the Delaware Corporation Law (*Rev. Code* 1915, § 1915 *et seq.,* as amended), and employed counsel to recover from the United States the aggregate of the license fees paid by Rogers Inc., and did recover the sum of $19,-136.00, and interest, the whole recovery being in the sum of $22,861.85. The defendant had agreed to pay its attorney

twenty-five per centum of the sum recovered and did pay him $5,715.16.

The plaintiff has brought this action for the recovery of the sum of $22,861.85, with interest on the several sums, as and when received, to February 19, 1934, aggregating $24,528.38, as money received by the defendant to and for its use. Its contention is that the defendant has in its possession money which, in equity and good conscience, it cannot retain and ought to refund to the plaintiff, and that, in such circumstances, as implied, or *quasi contractual* obligation arises to refund.

The defendant denies liability *in toto*. It contends that it may equitably retain all of the money recovered for the reason that, as the plaintiff has received the full price for its commodity, the good fortune of the defendant in recovering the license fees and interest from the United States, while an enrichment, was not an enrichment at the expense of the plaintiff.

■ The *quasi contractual* obligation or duty to refund money which, *ex aequo et bono,* ought not to be retained, enforceable under a count for money had and received, is well established and has long been recognized and applied in this state. The difficulty lies, not in an appreciation of the principle, but in its applicability to a particular state of facts.

In *Guthrie v. Hyatt,* 1 *Harr.* 446, the court said that the action of *assumpsit,* the count for money had and received being there relied upon, was like unto a bill in equity. See, also, *Wright v. Wright,* 2 *Harr.* 350; *Burton v. Wharton,* 4 *Harr.* 296; *Grone v. Economic Life Ins. Co. (Del. Ch.),* 80 *A.* 809.

■ Equitable principles, therefore, should guide in

the determination of the question presented; and, in order that justice may be done between the parties, their situations upon the formation of the contract of April 8, must be considered and contrasted with their same situations upon the reformation of that contract on June 27. It is not the contracts themselves which are of primary concern, but the conditions of the parties existing and the duty of the defendant as a result of those contracts.

On April 8, 1929, the parties were content with a price of twenty-six cents per pound, but very shortly thereafter, the defendant doubted whether it was advisable for it to pursue the contract in view of the heavy government license fees to be charged against each of the stores of its subsidiary. The contract was reformed. The price of "Spredit" was increased to twenty-nine cents per pound. The plaintiff, in fact, assumed the burden of the payment of the license fees, although, in form, they were to be paid, and were paid by the defendant's subsidiary. Had it not been for this consideration the original price of twenty-six cents would have been satisfactory to both parties, and, from the same volume of sales, the plaintiff would have received the sum of $57,851.04. As a result of the new agreement, giving the plaintiff an increase in price of three cents but imposing upon it the burden of the license fees, it actually received $44,550.16, a loss to it of $13,300.88.

Notwithstanding the fact that the plaintiff had doubted the application of the taxing statute to its product, the question was extremely doubtful, and the subjection of the commodity to tax by way of license fees and the necessity of paying them was a fact, and accepted as such by the parties.

The defendant paid to the plaintiff the increased price of twenty-nine cents for 222,504 pounds of "Spredit," and, therefore, paid to the plaintiff $6,675.12 more than it would

have paid under the first agreement. To that extent it suffered loss. The stores of the defendant's subsidiary obtained the licenses to sell the product, and the license fees were paid by the subsidiary. The plaintiff was not known to the United States in the matter, although, in fact, it paid the fees. The plaintiff could not recover the fees from the United States. The defendant, or its subsidiary, was entitled to proceed to recover, and did recover the sum of $19,136.00, and interest aggregating $3,705.85, or a total of $22,861.85. As a result of the mutual misconception of the applicability of the statute the defendant was enriched to the extent of $22,861.85 less $6,675.12 at the expense of the plaintiff.

But there is another consideration. To obtain the refund of the license fees and interest, the defendant employed counsel upon a contingent fee of twenty-five per cent. of the amount recovered, and counsel received, according to the stipulation of facts filed, the sum of $5,715.46, so that, adding the sums of $6,675.12 and $5,715.46, and subtracting the aggregate of these sums from $22,861.85, there results the sum of $10,471.27 as the amount of the enrichment of the defendant at the plaintiff's expense, disregarding interest, as a result of the reformation of the contract of April 8, and the refunding to the defendant of the license fees and interest.

There is no evidence before us of a demand made by the plaintiff upon the defendant. The plaintiff brought suit on March 3, 1933. On that date the defendant had in hand the sum of $10,471.27 which equitably belonged to the plaintiff. In such circumstances interest should be calculated from the time of the demand, in this case, from the date of the bringing of the suit. 3 *Williston, Contr.*, § 1415; 41 *C. J.* 72. Interest, from March 3, 1933, to March 24, 1934, the date of trial, amounts to $659.67, which, added to

the principal sum of $10,471.27, is the sum of $11,130.94, to which the plaintiff is entitled.

██ The plaintiff contends that the increase of price of three cents ought not to be allowed the defendant as presumably this increase was passed on to the consumer of the product without resulting loss to the defendant. There is no evidence to support this contention.

██ The plaintiff also contends that the expense of counsel fees was an unnecessary expense, for the reason that as the Supreme Court had already decided that the license fees were not chargeable upon a commodity of the nature of "Spredit," the refund of the license fees and interest could have been accomplished by any authorized official of the defendant company as a matter of routine. It is in evidence, however, that the counsel employed by the defendant was recommended to it by the plaintiff who had employed him in similar matters on a contingent basis of thirty-three and one-third per cent. The president of the plaintiff company admitted that if his company had been in a position to prosecute the claim for the refunding of the license fees, the claim doubtless would have come under its agreement with the same attorney, and the plaintiff company would then have paid thirty-three and one-third per cent. instead of twenty-five per cent. of the receovery. In the circumstances, therefore, it not having been shown, nor suggested, that there was collusion between the defendant and its attorney, we are of the opinion that the amount paid counsel should be allowed to the defendant.

The conclusion reached places the parties as nearly as possible, as we think, in the situation in which they would have rested had it not been for the complication arising from the change of the contract due to the supposed necessity of the payment of the license fees on the product. The

defendant was unjustly enriched at the expense of the plaintiff in the sum of $11,130.94, and judgment is given in favor of the plaintiff in this amount.